IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| JEFFREY & DAWN SCHILKE, ) | |
| ) | CASE NO. BK03-41797 |
| Debtor(s). ) | A04-4014 |
| TOP HAT AG, L.L.C., ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| ADAMS BANK & TRUST; JEFFREY & ) | |
| DAWN SCHILKE, ) | |
| ) | |
| Defendants. ) | |

ORDER

Trial was held in North Platte, Nebraska, on August 30, 2005, on the complaint by Top Hat Ag, L.L.C., to determine the validity, priority, or extent of a lien. James Nisley appeared for the plaintiff, and Robert Reynolds and James Korth appeared for Adams Bank & Trust.

There also is pending the plaintiff's motion to amend the complaint to conform to the evidence (Fil. #62) and Adams Bank & Trust's objection thereto (Fil. #62). That motion will be addressed first.

I. Amendment of the pleadings to conform to the evidence

Federal Rule of Bankruptcy Procedure 7015(b), which incorporates Federal Rule of Civil Procedure 15(b), governs amendments to pleadings to conform to evidence:

> **(b) Amendments to Conform to the Evidence**. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If

> evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The Bankruptcy Appellate Panel of the Eighth Circuit explained Rule 15(b) and its intent, noting that amendments under Rule 15(b) are to be "freely granted":

> Civil Rule 15(b) permits parties to amend their pleadings "to bring the pleadings in line with the actual issues upon which the case was tried[.]" Brown v. Cooper Clinic, P.A., 734 F.2d 1298, 1301 (8th Cir. 1984) (quoting Gallon v. Lloyd-Thomas, Co., 264 F.2d 821, 825 n.3 (8th Cir. 1959)); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d ed. 1990), § 1493. A motion to amend to conform may be made at any time. Kim v. Nash Finch Co., 123 F.3d 1046, 1062 (8th Cir. 1997) (citing Fed. R. Civ. P. 15(b)). . . . The intent of the rule is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982). Accordingly, Fed. R. Civ. P. 15(b) is liberally construed and such amendments are freely granted. See Samayoa v. Jodoin (In re Jodoin), 196 B.R. 845, 851 (Bankr. E.D. Cal. 1996), aff'd, 209 B.R. 132, 136 (9th Cir. B.A.P. 1997)(citing 3 James Wm. Moore, et al., Moore's Federal Practice ¶ 15.13[2] (1996)).

Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.), 267 B.R. 602, 610 (B.A.P. 8th Cir. 2001).

Here, the plaintiff filed the motion to amend after the close of evidence at trial and before written final argument were due, although it had put opposing counsel and the court on notice prior to trial that such a motion would be made. Top Hat Ag wants to amend its complaint, which requests a determination of the nature and priority of liens as between the parties, to include the theories of fraudulent misrepresentation and equitable estoppel. Adams Bank objects, citing the untimeliness of the motion, the defendant's lack of consent, and the lack of evidence to support

the plaintiff's newly raised theories.

As Rule 7015(b) and the Richards & Conover Steel case make clear, the motion can be made at any time, so timeliness is not determinative. As for Adams Bank's position that insufficient evidence exists to support the allegations in the amended complaint, such an argument goes to the weight and credibility of the evidence adduced at trial, which will be a factor in the ultimate assessment of whether the plaintiff has proved the elements of its case.

Regarding the assertion of lack of consent by Adams Bank, Rule 7015(b) permits issues to be tried "by express or implied consent of the parties." The test for whether a party impliedly consented to trial of claims that were not alleged in the complaint is "'whether the opposing party had a fair opportunity to defend and whether he would have presented additional evidence had he known sooner the substance of the amendment.'" Richards & Conover Steel, 267 B.R. at 610 (quoting In re Prescott, 805 F.2d 719, 724-25 (7th Cir. 1986)). If evidence in support of the claim was introduced at trial without objection, consent may be implied. Richards & Conover Steel, 267 B.R. at 610 (citing Shen v. Leo A. Daly Co., 222 F.3d 472, 479 (8th Cir. 2000)).

The Richards & Conover Steel decision also cited a two-part test relied on by the trial court in permitting an amendment to conform to the evidence at the close of the trial. That test asks (1) was the new issue or theory actually tried, or stated differently, was there evidence to support a finding on such issue or theory, and (2) did the opposing party have a full opportunity to defend on the alternate theory. 267 B.R. at 611 (citing Bahr v. Nett (In re Nett), 70 B.R. 868, 871 (Bankr. W.D. Wis. 1987)).

In this case, Adams Bank was aware of Top Hat Ag's theories of fraudulent misrepresentation and equitable estoppel several months prior to trial, and certainly as of March 2005 when the fraudulent misrepresentation theory was raised in Top Hat Ag's brief in opposition to the bank's motion for summary judgment. The bank's pre-trial brief discussed the necessary elements of proof, while noting that the issue was not properly pled. Evidence on the issue came in at trial without objection, and Adams Bank does not argue that it was not adequately prepared to deal with the issue. I find that the issues were tried with the implied consent of Adams Bank, and the motion to amend the pleadings to conform with the evidence should be granted.

II.  Trial issues

A.   Facts

The debtors were farmers. Adams Bank financed their operation, beginning in early 2001. In 2003, the Schilkes had three loans with Adams Bank – a real estate loan, a machinery loan, and an operating line of credit for $600,000 with a 90 percent guaranty through the Farm Service Administration.

The debtors purchased fertilizer and chemicals from Top Hat Ag each year since 1999. In April 2003, the debtor Jeffrey Schilke contacted Top Hat Ag about buying fertilizer for his wheat crop. Before agreeing to deliver to him, Shawn Jones of Top Hat Ag contacted Miles Colson at Adams Bank to check on the status of the debtors' operating loan. At that time, Mr. Colson indicated the loan was not yet in place but they were working on it. About two weeks later, on April 17th, Mr. Jones called the bank again and was told by Mr. Colson that the bank was finishing up the note. At trial, Mr. Colson testified he had previously given deposition testimony in this case stating that he told Mr. Jones during that call that the Schilkes' operating line of credit for 2003 had been approved. He testified at trial that his deposition statement was incorrect because the line of credit had not yet received final approval at that time. In addition, he testified that he did not recall making such a specific statement to Mr. Jones in April 2003. He further testified that the line of credit could not have been approved until the bank officers reviewed the debtors' updated financial statement, which the bank received in May 2003.

I find as a fact that even if Mr. Colson stated in April 2003 that the line of credit had been approved, he did not intentionally make the statement to mislead Mr. Jones. In other words, he did not make an intentional representation that he believed would be relied upon to Top Hat Ag's detriment and the bank's benefit. Moreover, the statement made by Mr. Colson – if it was in fact made – did not constitute a legal commitment to honor any checks written by the debtors. Mr. Jones made a business decision to deliver the fertilizer and chemicals without a subordination agreement or other written assurance from the bank. Between mid-April and early May, Top Hat Ag delivered more than $70,000 worth of fertilizer and chemicals to the debtors.

In May 2003, the debtor wrote a check to Top Hat Ag which the bank refused to pay. Top Hat Ag then learned from the bank that the debtors' line of credit had been cut off because the bank had become aware of significant changes in the debtors' financial condition. Top Hat Ag is still owed $43,012.32 for the 2003 crop year.

After the bank refused to permit further usage of the line of credit, the debtors completed the sale of real estate; the proceeds paid off their land loan and paid the machinery loan down to approximately $149,000. The operating note had a balance of $595,000. The debtors filed a Chapter 12 petition on May 21, 2003. The case has since been converted to a Chapter 7.

The bank admits that it knew in April that the Schilkes were attempting to sell real estate, but it was not aware of the depth of their financial problems until early May when the debtors brought in a new financial statement.

Post-petition, the debtors were authorized to borrow up to $100,000 for 2003 crop expenses from Martin Farms, L.L.C. Adams Bank stipulated that Martin Farms could have a first-priority lien on the crops up to $100,000, and the bank would take a second-position lien for $200,000. That stipulation was approved in July 2003.

In the course of their dealings, the debtors regularly carried a past-due balance with Top Hat Ag. They usually paid the account for one year down or off early the following year by selling grain. When Mr. Jones and Mr. Schilke discussed the 2002 account balance in early 2003, Mr. Schilke assured Mr. Jones that he had corn to sell and would pay Top Hat Ag from those proceeds. No such payments were made on the account, but Top Hat Ag continued to do business as usual with the debtors. It appears that the 2002 crop proceeds were used to pay down the debtors' loans with Adams Bank.

Top Hat Ag puts fertilizer liens on all accounts more than 60 days old. It had a lien on the Schilkes' 2002 crop, and filed a lien on the 2003 crop after completing the invoicing for the spring 2003 business.

The parties dispute the priority of their liens on certain crop proceeds currently being held in escrow, based on the bank's blanket farm liens and Top Hat Ag's fertilizer liens. Top Hat Ag also alleges that the bank made fraudulent misrepresentations when Mr. Colson led Mr. Jones to believe that the operating funds would be approved and the debts incurred for fertilizer and chemicals would be paid.

  B. Lien priority

Under Nebraska law, a lien upon crops in favor of the person who furnishes and applies fertilizer and agricultural chemicals is created at the time the products are supplied. It is valid against subsequent lienholders if filed within 60 days, and it attaches as

of the date of filing. It does not have priority over prior lienholders unless they agree in writing. Neb. Rev. Stat. §§ 52-1101, -1103; <u>Commerce Sav. Scottsbluff, Inc. v. F.H. Schafer Elevator, Inc.</u>, 436 N.W.2d 151, 161 (Neb. 1989).

Top Hat Ag filed liens on the 2002 crop in June and September 2002, and on the 2003 crop on May 27, 2003. Adams Bank filed its blanket financing statement, and a blanket Effective Financing Statement on the debtors' crops, in February 2001. There is no evidence that Adams Bank agreed, in writing or otherwise, to subordinate its security interest to these liens.

To the extent the stipulation regarding post-petition financing altered lien priorities, it did so only between the bank and Martin Farms. The bank agreed to subordinate its priority position in the first $100,000 of crop proceeds to Martin Farms. The bank's prior perfected lien remained in place as against Top Hat Ag's statutory lien.

Therefore, Adams Bank's lien in the crop proceeds has priority over Top Hat Ag's lien.

    C.   Fraudulent misrepresentation

Top Hat Ag alleges that Mr. Colson's statements to Mr. Jones in April 2003 regarding the likelihood of the loan's approval constitute fraudulent misrepresentation on the part of the bank.

To recover on a fraudulent misrepresentation claim, the plaintiff must show (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it should be relied upon; (5) that the party reasonably did so rely; and (6) that he or she suffered damage as a result. <u>Eicher v. Mid America Fin. Inv. Corp.</u>, 702 N.W.2d 792, 803 (Neb. 2005).

Here, the evidence does not establish the second and third elements, that Mr. Colson made false statements or knew them to be false when he made them. Rather, the evidence indicates that in April, the bank believed and expected that the operating line of credit for 2003 would be approved. Mr. Colson testified that he was aware in April that the debtors were trying to sell real estate, but attributed it to the debtors' desire to improve their chances of obtaining additional credit for 2003. Not until Mr. Colson saw the May 2003 balance sheet was he aware of the decrease in assets and the deterioration of the bank's collateral position, and the

decision to cut off the line of credit was made shortly thereafter. This occurred after Top Hat Ag had already supplied most of the fertilizer and chemicals requested by the debtors that spring.

The claim for fraudulent misrepresentation must be denied.

D.   Equitable estoppel

Estoppel exists to protect a party's rights, but cannot be used to create a right. Schafer Elevator, 436 N.W.2d at 160. "The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to his detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed." Friehe v. Schaad, 545 N.W.2d 740, 748 (Neb. 1996).

A claim of equitable estoppel requires two separate sets of elements to be established by clear and convincing evidence. Schafer Elevator, 436 N.W.2d at 161. The plaintiff must first prove that the party to be estopped (1) engaged in conduct which amounts to a false representation or concealment of material facts, or, at least, which was calculated to convey the impression that the facts were otherwise than, and inconsistent with, those which Adams Bank now attempts to assert; (2) had the intention, or at least the expectation, that such conduct would be acted upon by, or influence, Top Hat Ag; and (3) had knowledge, actual or constructive, of the real facts. At the same time, the evidence must also show that the party asserting estoppel (1) had a lack of knowledge and of the means of acquiring knowledge of the truth of the facts in question; (2) relied, in good faith, upon the conduct or statements of the bank; and (3) acted or refrained from acting because of the bank's conduct such as to change their position or status to their injury, detriment, or prejudice. O'Neill Prod. Credit Ass'n v. Mellor, 371 N.W.2d 265, 267 (Neb. 1985).

As discussed above, the evidence does not support a finding of fraudulent misrepresentation, in part because there has been no conduct amounting to a false representation or a representation that the facts at the time were other than the bank believed them to be. By the same token, I cannot enter a finding of equitable estoppel.

Finally, the bank's request for an award of the costs of this action is denied. Top Hat Ag had a reasonable basis for bringing this action based upon Mr. Jones's understanding of what had occurred, although my factual findings have resulted in an outcome adverse to the plaintiff.

  IT IS ORDERED: The plaintiff's motion to amend the complaint to conform to the evidence (Fil. #62) is granted. Separate judgment will be entered in favor of Adams Bank & Trust on the complaint.

  DATED:  November 8, 2005

              BY THE COURT:

              /s/ Timothy J. Mahoney
              Chief Judge

Notice given by the Court to:
  *James Nisley
  Robert Reynolds
  James Korth
  W. Eric Wood
  U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.